## KILLOREN v. BOYD, CRONK & CO.
### No. 11865.

Circuit Court of Appeals, Eighth Circuit.
April 23, 1941.

Joseph H. Grand, of St. Louis, Mo. (Harry S. Gleick and Jones, Hocker, Gladney & Grand, all of St. Louis, Mo., on the brief), for appellant.

Chase Morsey, of St. Louis, Mo. (Robert T. Hensley, of St. Louis Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from an order allowing Boyd, Cronk & Company, a firm of accountants, $16,303.06 for services performed by it in reliance upon an order authorizing its employment and fixing the measure of its compensation. The appellant contends that the court was without authority to allow more than the $7,500 which the referee in bankruptcy had found to be the amount which the appellee was reasonably entitled to receive for the services rendered.

The facts are not in dispute and are, in substance, as follows:

The Hamilton-Brown Shoe Company is a corporation with headquarters at St. Louis, Missouri. It was, prior to bankruptcy, a large concern engaged in the manufacture of shoes, with plants at vari-

ous places in Missouri. On April 17, 1939, it filed in the court below a petition for reorganization under Chapter X of the Bankruptcy Act, 52 Stat. 883, 11 U.S.C.A. § 501 et seq. On that day the court appointed James K. Vardaman and John W. Lake trustees. On the following day, one of their attorneys drafted a petition for authority to employ the appellee, at stated rates of compensation, to examine and verify the books and records of the company. The petition was filed on April 19, 1939, and on that day the court made an order granting it. The order was filed April 20, 1939, and read as follows:

"Having considered the petition herein filed by the Trustees for authority to employ accountants, the Court doth order that the Trustees be, and they are hereby, authorized to employ the accounting firm of Boyd, Cronk & Company to make an examination, verification and report of the books and accounting records of the debtor, at the rates of compensation following:

"For the services of a supervising partner Fifty ($50.00) Dollars per day; for the services of a Senior Accountant, Thirty-five ($35.00) Dollars per day; and for the services of such Junior Accountants as may reasonably be required, Twenty ($20.00) Dollars each per day."

On April 18, 1939, Ernest Boyd, a member of the firm and a certified public accountant, was called to the office of the Hamilton-Brown Shoe Company by the trustees. They instructed him to take charge of the accounting department of the company, to make an examination, and to prepare such statements as they would require, "looking at that time to reorganization." Mr. Boyd immediately arranged to have men present the next day to take inventories. The firm immediately put accountants to work upon the books of the company. They found that the books had not been posted up to March 31, 1939, and were "confused"; that the accounting staff of the company was not thoroughly competent and that its members were only partially familiar with the requirements of good accounting; and that it would be slow and difficult work to prepare statements from the books. On or about April 19, 1939, the trustees removed the head of the accounting staff of the company, which added to the difficulties of the firm in making the examination. Mr. Boyd and Mr. Cronk, who was also a member of the firm, each rendered services as "supervising partner."

Three of the firm's "senior accountants" worked under their supervision, and at times as many as eight "junior accountants" were engaged in the accounting work. Mr. Boyd did most of the work as "supervising partner," and during practically all of the time while the work was progressing he had six or seven of the firm's accountants working with him on the company's books and records.

On June 22, 1939, the company was adjudicated a bankrupt. Between April 18, 1939, and June 22, 1939, the firm's accountants had prepared balance sheets and reports, had supervised the keeping of the books of the company and the issuance of checks by the trustees, had conferred with the trustees and the directors of the company, upon request, and had furnished them information in connection with the attempts which were then being made to refinance and reorganize the company. The firm had also examined, verified and supervised the operation of the business by the trustees from an accounting and financial standpoint. The accountants of the firm, however, did little or no actual bookkeeping, since "the Hamilton-Brown staff was sufficient to take care of that." Computed at the rates of compensation specified in the order of court authorizing the employment of the firm, it had earned, up to June 22, 1939, $11,976.82.

When the company was adjudicated bankrupt on June 22, 1939, the firm had not completed the work assigned to it by the trustees, Vardaman and Lake. One item of this unfinished work was an examination and report on inter-company transactions between the Hamilton-Brown Shoe Company and the Collins-Morris Shoe Company, its principal stockholder. The rest of the unfinished work was the completion of the report of the trusteeship of Vardaman and Lake to June 22, 1939, and of the estate between that date and July 7, 1939, when the trustee in bankruptcy was appointed. Some question was raised, at the time of the adjudication in bankruptcy, as to whether the firm should proceed with its examination and report on the inter-company transactions, and Mr. Cronk visited the referee in bankruptcy and advised him that to complete that work might cost as much as $2,000. The referee, who apparently received the impression, from what Mr. Cronk said, that the completion of the entire work undertaken by the firm would cost not more than $2,000, told Mr. Cronk

that "if you are willing to gamble that the new Trustee appointed will authorize this work to be done, why, you can go ahead." William H. Killoren was appointed trustee on July 7, 1939. Mr. Cronk then asked him whether to continue the work on the inter-company accounts, and was told to go ahead with it. The work done by the firm in this regard, computed upon the basis fixed by the order of court authorizing the firm's employment, amounted to a little less than $2,000 and was finished August 28, 1939. The time sheets of the appellee, the accuracy of which is not questioned by the appellant, show that, under the measure of compensation fixed by this order of court, the firm was entitled to a total of $16,303.06 for its services.

The firm, after it had completed its work, made application to the referee for the allowance of $16,303.06 for services and of $521.12 for expenses. The referee allowed the expenses, but allowed only $7,500 for services, which he found was "the reasonable amount with which the bankrupt estate should be charged for the work done under the order of the court of April 20, 1939." The court, in reversing the order of the referee and allowing the firm's claim in full, found "that all of said services were rendered at the special instance and request of said Vardaman and Lake, Trustees, and were all within the terms of said order of Court directing said employment and fixing said compensation."

The appellant contends that the court was without authority to make any allowance for compensation for the services rendered by the firm before the order authorizing its employment was filed, for work done in making the examination and report on inter-company transactions, for work done in supervising the accounting staff of the company, or for work done in supervising the accounts of the trustees and conferring with them upon accounting and financial matters. This contention is based upon the theory that the court authorized the trustees to employ the firm only to make "an examination, verification and report of the books and accounting records of the debtor."

General Order in Bankruptcy 45 of the Supreme Court of the United States (305 U.S. 701, 702, 59 S.Ct. clxxxv) provides that "no auctioneer or accountant shall be employed by a receiver, trustee or debtor in possession except upon an order of the court expressly fixing the amount of the compensation or the rate or measure thereof." It is to be noted that the General Order does not require that the court shall state with particularity in its order the nature of the services an accountant is to perform, nor does it say that, if an accountant is employed under an order which specifies the nature of his services and the rate of his compensation, he may not be paid for other necessary or incidental accounting services performed by him at the direction of the trustee.

There is no contention in this case that the firm was not properly employed, or that it did not perform all of the services which it claims to have performed, or that the services were not all performed at the direction of the trustees, or that they were unnecessary or unsatisfactory. The only contention is that some of them fell outside of the limits of the authorization.

■ The order authorizing the employment of the firm and fixing its rate of compensation and the order allowing compensation at the rate fixed were made by the same judge. This Court would not be justified in assuming that, when he signed the order fixing the compensation of the appellee, he did not understand what the trustees intended to employ the firm of accountants to do. Since he was, in effect, the author of the order, we can think of no valid reason why we should not accept his construction of his own order. See Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 141, 60 S. Ct. 437, 84 L.Ed. 656; Green Valley Creamery v. United States, 1 Cir., 108 F.2d 342, 347. It was the duty and responsibility of the court below to decide whether the accounting services performed at the direction of the trustees were within the authority which it had granted to them and were to be paid for at the specified rate. The technical position taken by the appellant has not a strong appeal. If on July 7, 1939, when he was appointed, or thereafter, he was of the opinion that the services of the appellee should be terminated or that its rate of compensation should be reduced, he should have notified it to that effect, and should have applied to the court for instructions. He should not have permitted the firm to continue rendering services which he knew, or ought to have known, were being performed with the expectation that they would be paid for at the rate fixed by the court. That the court entered its order, authorizing the trustees to employ the

firm, a day or two after it had been put to work by them, we consider inconsequential. It was, of course, contemplated that the trustees would procure the services of accountants and would present an order authorizing their employment. We think the entry of the order constituted approval by the court of the employment of the firm, and legitimized the services already rendered.

■ While it is of great importance that the expense of administering an insolvent estate should be kept to a minimum, it is equally important that those administering such an estate should live up to the letter and the spirit of engagements lawfully made with those whom they employ.

Our conclusion is that the court below was justified in reversing the order of the referee and allowing the appellee compensation at the rate fixed by the order authorizing its employment.

The order appealed from is affirmed.