In the Matter of **BROOKS & WOOD-INGTON, INC., Bankrupt.**

Appeal of **CARNCROSS, SCHROEDER, STEIN, WILLIAMS, YOUNG & COMPANY,** and **David M. Johnson, C.P.A.'s.**

Nos. 73–1119, 73–1120.

United States Court of Appeals,
Seventh Circuit.

Resubmitted Nov. 5, 1974.

Decided Dec. 3, 1974.

Thomas G. Ragatz, James F. Lorimer, David F. Grams, Madison, Wis., for appellant.

Before CUMMINGS, PELL and STEVENS, Circuit Judges.

PELL, Circuit Judge.

These are consolidated appeals arising from bankruptcy proceedings and essentially involve the matter of the correctness of the disallowance of fees claimed by accountants and rendered for the trustee in bankruptcy for Brooks & Woodington, Inc.

The bankruptcy proceedings were initiated in 1965, first under Chapter XI of the Bankruptcy Act but shortly thereafter becoming a regular bankruptcy administration case. William T. Rieser was appointed as trustee and thereupon petitioned the referee for authority to hire an accountant and "to secure a certified audit, internal and external, so that the trustee may have and use full and comprehensive financial reports on the assets and liabilities of the above bankrupt corporation." An order was

entered authorizing the retention requested. However, the accountants selected apparently developed conflicts of interest and in March 1966, an order was entered authorizing the trustee to retain Gordon, Carncross & Associates and David M. Johnson, C.P.A., one of its partners, the present appellants, to bring the books up to date and to audit the same, "at the compensation rate set forth in the attached petition."

The petition on which the referee's order was based had indicated that Johnson would work one week on the books and would then estimate the cost and time to accomplish the task at hand. The schedule of fees specified $12.00 per hour for certified public accountants, $9.00 per hour for senior accountants, and $7.00 per hour for junior accountants. The appellants submitted in response to the order based upon this petition their recommendations as to the work to be done and estimated the cost to be $7,500.00.

The trustee then filed a petition requesting authorization to proceed to perform the work of bringing the books up to date and auditing the same. The referee entered an order authorizing the retention of the appellants for the purposes indicated "at the same rate of compensation as previously ordered." In addition, however, the order extended the authorized services to include auditing the books of subsidiary, affiliated and related corporations, partnerships, and trusts of the corporation and of Neil A. Woodington.

The picture of the situation which then developed, and which appraisal is not refuted in the record before us, as presented by the appellants is as follows: Appellants then proceeded with the tedious and enormously time-consuming task of reconstructing the records. The evidence disclosed that there was no conceivable way the total extent of the necessary services could have been originally estimated, without some great intimacy into the affairs of the bankrupt and all related parties, as the expanding

chain of complexity continued to unfold as the interrelationships with other entities were explored. What was finally found to be essential, was the reconstruction from scratch of records from as far back as nine years for the bankrupt and ten related corporations, partnerships, and trusts. This reconstruction was based upon an analysis of incomplete, inaccurate, misleading, and fundamentally unsound records through third party records (e. g., bank records) relating to thousands of interwoven accounting transactions. The trustee in bankruptcy for Allied Development Corporation whose affairs were grossly intertwined with those of the bankrupt and who was by far its largest creditor, testified that the status of the records as to the intercompany account "were a mess. . . . hopelessly entangled." The testimony further disclosed that the principals of the bankrupt and its related entities engaged in extensive check kiting and other transactions and fund transfers between entities that made their tracks nearly impossible to follow, probably purposely so. Appellants' expert witness, Gordon Volz, a prominent and experienced C.P.A., testified that he had never seen a worse mess and the Trustee stated he did not believe "anything could have beat" the situation for complexity. It is now common knowledge and a matter of public record in this community that the tangled web spun by Mr. Woodington and his associates deceived many people and precipitated the extensive losses involved in this and related bankruptcy proceedings, and that Mr. Woodington went to prison after conviction of charges pertaining to his activities in connection with an affiliated corporation.

It further appears that bills were submitted regularly and these bills were accumulated in the referee's file. Periodic payments with the approval of the referee were made to the appellants totaling some $34,000.00. At no time was there any limitation of the authority of the trustee to continue obtaining the services of the appellants. The trustee, in

reliance upon the authority of the 1966 orders, continued to require the services of the appellants in attempting to reach solid ground in what was apparently a bottomless pit. There appears to be no claim of lack of quality of the work or that any of it was performed unnecessarily or in bad faith. When the services were substantially completed, the referee in letters and oral communications indicated an unfavorable attitude toward the payment of the remaining unpaid bills. The appellants thereupon petitioned the district court for an order to transfer the matter of the disposition of the claim for fees to another referee. This was denied and is the basis of appeal No. 73–1119. We do not, because of the disposition of appeal No. 73–1120, need to determine this issue.

When the matter came before the referee who had issued the original orders, the total of the unpaid accounting claims was approximately $23,000.00. Upon determining that the amount remaining for distribution to unsecured creditors was insufficient for any payment to that class of creditors if the balance of the accountants' claims was allowed, the referee denied payment of the remainder of the claim. This was affirmed by the district court and this appeal followed.

The delay in the disposition of this appeal is regretted. However, the case as it is before us is an eloquent testimonial to the value of the adversary system. In April 1973 no brief in opposition to the appellants' brief having been filed, this court ordered that the parties show cause why the appeal should not be submitted for decision without the filing of a brief in opposition by the appellees. No briefs were filed and in December 1973 it was ordered that the appeal be submitted to the court for decision without oral argument and without the filing of an appellees' brief pursuant to Rule 2 of the Federal Rules of Appellate Procedure.

Again, however, because of the desirability of having opposing views presented to an appellate court, an order was entered in September 1974 notifying the trustee in bankruptcy and any other known interested parties that the court would accept opposing briefs.

On two occasions the trustee in bankruptcy by letter advised this court that he did not intend to file a brief as he fully supported the position of the appellants. A brief was filed pursuant to the September 1974 order by the trustee in bankruptcy for Allied Development Corporation which was the principal creditor of the present bankrupt. This brief was filed notwithstanding that upon the occasion of the hearing on fees before the referee, the trustee of Allied stated that he did not take a position either of supporting or opposing the fees in that he had an obligation as an attorney and trustee of Allied Corporation but also he stated he was "a decent human being and wanted to see that justice was done."

Because of the policy underpinnings of this case, despite the fact that it was ordered considered in December 1973 without the filing of an appellees' brief and despite the belatedness of the filing of the opposition brief, we have in rendering this opinion given full consideration to the brief in opposition as well as the opinions of both the referee and the district court. Although the case is being disposed of pursuant to Rule 2 without oral argument, it is not being handled on what amounts to a default basis.

In so doing, however, we also note the lack of contravention of appellants' assertions as follows: The evidence disclosed that without such extensive accounting services the assets and obligations of the bankrupt could not have been ascertained, and but for such ascertainment the Trustee could have not realized the approximately $700,000.00 of assets actually collected, or determined the correct and legitimate claims. The existence of multiple security devices on various properties necessitated extensive accounting merely to straighten out the secured claims. The Trustee testified that the secured creditors would not

have been paid in full without the accounting services.

The referee in his dispositive opinion stated he had "no reason to doubt that the subsequent accounting work of Carncross was done expertly and in good faith." The motivational factor of the referee's decision thus appears not to be that some benefit from the services was not realized by creditors, albeit secured ones, nor that the services were makework but rather that an allowance of the claimed fees would mean, insofar as general creditors were concerned, administration expenses would consume the available estate, a result that might have been reachable in a Dickens' novel but to be eschewed in bankruptcy court.[1]

However, by the disposition the referee did reach, the general creditors will receive a 3.61% dividend. We have difficulty in regarding this as being little else than a token and as such adding no real deference to what has sometimes been termed the economical spirit of the bankruptcy act.

The district court in its opinion stated that "[i]t would not have been unreasonable . . . if the referee had concluded that the petitioner's entire claim be allowed," but further the district court declined to conclude that it was unreasonable for the referee "to limit the petitioner to a fee which was about five times as great as petitioner's initial estimate, and which equalled the sum estimated by petitioner after it had been deeply involved in the assignment for more than 10 months."

While we agree with the district court that the scope of review of the referee's decision is of limited scope and that it should not be overruled absent of error of law or a clearly erroneous finding of fact, we are of the opinion that the law here has been erroneously applied.

We also agree with the contention of the principal creditor asserted on this appeal that an appellate court not be quick to revise an allowance or disallowance of fees involving the exercise of discretion of the bankruptcy court, which has been concurred in by the district court, 3 Collier on Bankruptcy, Sec. 62.12(4), p. 1488. Our reluctance, *inter alia*, has been demonstrated by the continuing attempts to secure views in opposition to the appellants' position and we have not hastily or lightly reached the decision we have but we are bound to do so as a matter of law.

Order No. 45, General Orders in Bankruptcy, provides in relevant part:

"No accountant shall be employed by a trustee . . . except upon an order of the court expressly fixing the amount of the compensation or the rate of measure thereof . . ."

Here the trustee was authorized to have the services performed which were in fact performed at his direction. Those services were performed over a number of years time at the rate fixed by the court. There is no indication that the rate increased as we are aware professional hourly rates did during the period of time. At no time did the referee, as he readily could have, amend or rescind the standing order for the retention and utilization of the services. The district court would place the burden on the accountant to protect his rights by requesting a maximum level of compensation be inserted in the authorizing order. Order 45, however, is in the alternative of the amount of compensation or the rate or measure. Here the latter course was chosen and remained in ef-

---

1. "[W]hen he came to Westminster Hall, we found that the day's business was begun. Worse than that, we found such an unusual crowd in the court of chancery, that it was full to the door, and we could neither see nor hear what was passing within . . . It appeared to be something interesting for every one was pushing and striving to get nearer . . . 'Mr. Kenge,' said Allan, appearing enlightened all in a moment. 'Excuse me, our time presses. Do I understand that the whole estate is found to have been absorbed in costs?' 'Hem! I believe so,' returned Mr. Kenge. 'Mr. Vholes, what do *you* say?' 'I believe so,' said Mr. Vholes. 'And that thus the suit lapses and melts away?' 'Probably,' said Mr. Vholes."— Charles Dickens, Bleak House.

fect at all pertinent times. We do not read the Order as mandating both the rate and the maximum even though the referee presumably could impose in the authorizing order both controls.

■ The district court also would place the duty on the accountant, when it becomes apparent that cost estimates are to be exceeded, to secure the express approval of the referee before continuing work. This duty has greater arguable merit and it is noted here that the original estimate was woefully inadequate. However, the original estimate was based only upon the books of the bankrupt corporation and even upon those following an abbreviated period of one week of examination. The order subsequently entered extended the scope of the inquiry as we have noted and when despite the mounting costs, which were no secret to the referee or trustee, the trustee continued to require the accounting services, we do not find that duty arose to go to court to see if the unamended and rescinded order of authorization was still effective, particularly when the excess billings had been routinely paid.

We adopt the reasoning of the court in Killoren v. Boyd, Cronk & Co., 119 F. 2d 1, 3 (8th Cir. 1941) in allowing compensation to the appellee accounting firm:

> "He [the trustee] should not have permitted the firm to continue rendering services which he knew, or ought to have known, were being performed with the expectation that they would be paid for at the rate fixed by the court."

In *Killoren*, as in the present case, a time-equated rate was fixed. On the other hand, in that case there is some suggestion that the work or at least some of it was permissively performed insofar as the trustee was concerned while here the request for continuing services was that of the trustee. The *Killoren* trustee opposed the additional fees, here the trustee heartily approves of payment. We do note another difference between the two cases as we find no indication that in *Killoren* the payment of the fees would have eliminated a dividend to general creditors. Nevertheless, the court in *Killoren* did recognize the importance of economical administration as a factor for consideration:

> "While it is of great importance that the expense of administering an insolvent estate should be kept to a minimum, it is equally important that those administering such an estate should live up to the letter and the spirit of engagements lawfully made with those whom they employ." 119 F.2d at 4.

Counsel for the principal creditor in its brief argues that *Killoren* is not controlling. We agree but have accepted its reasoning. Counsel also argues that the reasoning should not be followed because *Killoren* involved a Chapter X Reorganization where by analogy the payment of the fee was in an attempt to keep the patient alive whereas in the present case there was a decedent and the fees were in the nature of funeral arrangements. While this is an interesting analogy, it fails to persuade us as the apparent purpose of the fees here obviously was to have an accountant work through the morass in an endeavor to secure and recover greater assets for ultimate distribution. In either case the reasoning of *Killoren* is applicable.

■ Turning to the question of whether the equality of importance continues in the situation where an administrative cost would prevent any general credit distribution, we are satisfied that it may, and upon the particular facts of the case before us, it does do so. In the present area of consideration, only general guidelines may be set, bearing in mind the spirit and purposes of the bankruptcy act and that the bankruptcy court within the jurisdiction granted by the Act operates as an equity court and upon equitable principles. See Southern Bell Telephone & Telegraph Co. v. Caldwell, 67 F.2d 802 (8th Cir. 1933).

■ Essentially, in this type of case, the particular facts of the case, on a case-by-case approach, will control. On the narrow facts of the present case, and we do not determine whether it should have any wider application, we hold as a matter of law that the desire for some dividend to creditors, if that dividend is only of a token nature, should not override the commitment lawfully made with those employed on specific terms by the bankruptcy court. We do not agree with the district court in its suggestion that there was any ambiguity in the present commitment.

As stated by the court in Jacobowitz v. Double Seven Corp., 378 F.2d 405, 408 (9th Cir. 1967), "[w]e think that the economical spirit of the Bankruptcy Act does not require, nor justify, reducing a requested fee where, as here, by all other proper standards it is a fair and reasonable one."

Finally, as we have noted hereinbefore, the claimant with the largest claim failed in the bankruptcy court to take a position in opposition of the allowance of the claim and as noted by the district court, "[n]o objections to the fees requested were filed."

It is not our intent in any way to find fault with the referee who displayed a conscientious and commendable devotion to an important concept of bankruptcy administration; it is merely that we find that the concept, on the facts of this particular case, must give way to the court commitment.

In the original brief of the appellants, they sought "full allowance of the Appellants' requested unpaid fees." No mention was made of interest. In the 22 page reply brief filed in response to the belated brief of the principal creditor, the subject of interest was first mentioned as a part of the final paragraph of the reply brief:

"Thus, it is respectfully requested that the Opinion and Order from which this appeal was taken be reversed, and that the Appellants be determined to be entitled to the full fees requested, plus interest thereon and their costs and disbursements on this appeal."

The brief contains no discussion of the law which might be applicable to the disposition of the interest issue.

■ There has been an informal indication that the assets here involved have been invested in interest-bearing securities or an interest-bearing account pending the outcome of this appeal. If this is indeed the fact, we recognize the existence of some equities for the allowance of interest. In general, where a fund in litigation is deposited in court, interest may be recoverable to the extent that the fund earns interest during such time. 47 C.J.S. Interest § 54.

■ This is not the ordinary case, however, of a fund deposited in court. This is a bankruptcy proceedings and rules of ordinary application may, and often do, give way before the Act. Our own examination of bankruptcy law has reflected no authority precisely in point. We find help, however, in the analogous situation of the allowance of interest on claims filed in bankruptcy. See Collier on Bankruptcy, 14th Ed. ¶ 63.16 (1972). Even though the claim is interest-bearing, "to cope in the most convenient and equitable manner with the debtor's apparent insolvency," the "law selects as decisive the date of the filing of the petition in bankruptcy," and "disregards, for the purpose of liquidation, interest accruing beyond that date." Id. at 1858. Of course, a different situation might exist if the estate were solvent. 8A C.J.S. Bankruptcy § 422.

In the light of the generally prevailing bankruptcy rule applicable to interest-bearing claims and particularly in view of the manner in which the claim for interest has been asserted in this particular appeal, we hold that the appellants are not to be allowed interest on the amount of their claim. They will, as the prevailing party, be entitled to costs of appeal.

Accordingly, the judgment affirming the referee's action with regard to the accountants' fees claimed by the appellants is vacated and the cause is remanded for the entry of an appropriate order allowing the claim in full.

Reversed and remanded.