19 F.3d 1371
 62 USLW 2707, 25 Bankr.Ct.Dec. 929, Bankr.
L. Rep. P 75,866
 In re COLORTEX INDUSTRIES, INC., Debtor.
VARSITY CARPET SERVICES, INC., Textile Coating, Ltd.,
Chemtech Finishers, Inc., Plaintiffs-Appellants,
Cross-Appellees,
v.
Thomas D. RICHARDSON, Trustee in Bankruptcy for Colortex
Industries, Inc., Defendant-Appellee, Cross-Appellant.
 No. 92-9159.
 United States Court of Appeals,
Eleventh Circuit.
 May 2, 1994.
 
 John P. Neal, III, Michael J. Tuck, Minor, Bell & Neal, P.C., Dalton, GA, for appellants.
 Thomas D. Richardson, Brinson, Askew, Berry, Seigler, Richardson & Davis, Rome, GA, for appellee.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before ANDERSON and CARNES, Circuit Judges, and MERRYDAY*, District Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 This appeal presents two issues--an issue of first impression with respect to the appropriate priority in bankruptcy for interest on trade debts accruing during a Chapter 11 reorganization; and also an issue involving a claim for immediate payment. We affirm the district court with respect to both issues.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 This case arises from the filing of a Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Georgia, Rome Division by Colortex Industries, Inc. ("Debtor") on October 24, 1989. Subsequent to filing, Debtor sought the extension of postpetition credit from Varsity Carpet Services, Inc., Textile Coating, Ltd., and Chem-Tech Finishers, Inc. (collectively "Varsity" or "appellants"). Varsity performed the requested carpet finishing services on a credit basis between October 26, 1989 and February 1, 1990 while the Debtor operated under Chapter 11.
 
 
 3
 On April 17, 1990, the bankruptcy court approved conversion of Debtor's Chapter 11 case to a case under Chapter 7. Subsequently, on March 2, 1992, Varsity filed a motion pursuant to 11 U.S.C. Sec. 503(b)(1)(A) seeking immediate payment and administrative expense priority on the principal indebtedness incurred postpetition and interest accruing thereon to date. The trustee in bankruptcy for Debtor, Thomas D. Richardson, ("Trustee" or "appellee") filed a response and objection to Varsity's motion.
 
 
 4
 The bankruptcy court held a hearing on Varsity's claims on April 14, 1992. The parties stipulated that the estate at the time of the hearing had $723,738.00 on deposit. Varsity argued that its claims should be paid immediately because the estate was solvent, stating that the Trustee's final report at the time of conversion to Chapter 7 reflected only $153,742.93 in unpaid debts. The Trustee argued that a number of outstanding Chapter 7 administrative expense claims, superpriority claims, and other Chapter 11 administrative expense claims against the estate precluded immediate payment. The bankruptcy court entered an order allowing the claims of Varsity as Chapter 11 administrative claims, representing principal indebtedness only.[1] Varsity's requests for interest and immediate payment were denied.
 
 
 5
 Upon appeal, the district court reversed the bankruptcy court's determination regarding interest, holding that the interest accruing during the Chapter 11 period on Varsity's postpetition trade debt should be accorded first administrative expense priority under Sec. 503(b)(1)(A), but that upon conversion to Chapter 7, interest accruing thereafter should be accorded only fifth priority under Sec. 726(a)(5). Varsity Carpet Services, Inc. v. Richardson, 146 B.R. 881, 887 (N.D.Ga.1992). The district court affirmed the bankruptcy court's denial of Varsity's motion for immediate payment, concluding that the bankruptcy court had not abused its discretion in denying immediate payment where the record did not adequately reflect the total amount of claims against the estate. Id. at 888.
 
 
 6
 The Trustee cross-appeals the district court's determination that interest is entitled to first priority as an administrative expense. The Trustee urges this Court to adopt the bankruptcy court's position--i.e., that only the principal debt is entitled to administrative expense priority. Varsity appeals the district court's denial of its motion for immediate payment. Varsity also argues that, in addition to administrative expense priority for interest during the Chapter 11 period, it should also be entitled to the same priority for interest accruing after the conversion to Chapter 7. For the reasons set out below, we affirm the district court; we hold that Varsity is entitled to administrative expense priority for interest accrued during the Chapter 11 period, but not for interest accruing after conversion; we also hold that the district court did not abuse its discretion in denying Varsity's claims for immediate payment.
 
 STANDARD OF REVIEW
 
 7
 Because the district court in reviewing the decision of a bankruptcy court functions as an appellate court, we are the second appellate court to consider this case. Capital Factors, Inc. v. Empire for Him, Inc., 1 F.3d 1156, 1159 (11th Cir.1993). Thus, this Court's review with regard to determinations of law, whether made by the bankruptcy court or by the district court, is de novo. Equitable Life Assurance Soc. v. Sublett, 895 F.2d 1381, 1383 (11th Cir.1990). The district court makes no independent factual findings; accordingly, we review solely the bankruptcy court's factual determinations under the "clearly erroneous" standard. Rush v. JLJ Inc., 988 F.2d 1112, 1116 (11th Cir.1993); Bankr.Rule 8013; Bankr.Rule 7052. Orders implicating the equitable discretion of the bankruptcy court in directing immediate payment of an administrative expense are reviewable for an abuse of discretion. In re Chips 'N Twigs, Inc., 58 B.R. 109, 110-11 (Bankr.E.D.Pa.1986); In re Robinson Truck Line, Inc., 47 B.R. 631, 638 (Bankr.N.D.Miss.1985); In re Callister, 15 B.R. 521, 534 n. 38 (Bankr.D.Utah 1981).
 
 DISCUSSION
 
 8
 I. Administrative Expense Priority for Interest
 
 
 9
 The Trustee argues that the district court erred in granting first administrative expense priority for interest on Varsity's postpetition trade claims. According to the Trustee, the plain language of the Code does not accord administrative expense priority (or first priority) for interest on postpetition administrative expense claims. The Trustee relies upon the general rule in bankruptcy that accrual of interest is suspended upon the filing of a bankruptcy petition, with any exception to this general rule narrowly construed to maximize the value of the estate preserved for the benefit of all creditors. Although the Trustee concedes that some courts have accorded interest on postpetition tax liabilities priority as an administrative expense, the Trustee urges that those decisions be circumscribed to the tax area, due to specific legislative history. Specifically, the Trustee notes that prior law dictated that administrative expense priority be accorded interest on tax claims based upon the Supreme Court decision of Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). The Trustee argues that prior law would dictate that interest on trade debts, as opposed to tax liabilities, would receive a lower priority than the attendant administrative expense claim.
 
 
 10
 Varsity rejects the Trustee's construction of the Code, urging that 11 U.S.C. Secs. 503(b) and 507 should be read broadly to permit interest as an administrative expense priority, relying upon the Code's definition of the term "including" to suggest that the list in Sec. 503(b)(1)(A) enumerating allowed administrative expenses is non-exhaustive. Varsity urges that failure to accord priority for interest on credit extended to a debtor in Chapter 11 would discourage creditors from extending credit because according interest a lower priority would in essence constitute an interest-free loan to the debtor. Such a result is inimical to Chapter 11's goal of reorganization of the debtor, according to Varsity. Varsity relies upon this Court's decision in In re Allied Mechanical Services, Inc., 885 F.2d 837 (11th Cir.1989), in which this Court, concluding that the Supreme Court's decision in Nicholas had continuing vitality, accorded administrative expense priority (or first priority) for interest on postpetition tax claims.
 
 A. Statutory Scheme of Distribution
 
 11
 In determining this question of priority, we turn first to the Bankruptcy Code itself. Rules of statutory construction dictate that the plain meaning is conclusive, "except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). " ' "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its policy." ' " Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222, 106 S.Ct. 2485, 2493, 91 L.Ed.2d 174 (1986) (quoting Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (in turn quoting United States v. Heirs of Boisdore, 8 How. 113, 122, 12 L.Ed. 1009 (1849))). Finally, where a statute is ambiguous, we must analyze whether our interpretation accords with established precedent prior to the enactment of the Code, mindful that " 'no changes in law or policy are to be presumed from changes in language in [a statute's] revision unless an intent to make such changes is clearly expressed.' " Finley v. United States, 490 U.S. 545, 554, 109 S.Ct. 2003, 2009, 104 L.Ed.2d 593 (1989) (quoting Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 227, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957)). Silent abrogation of judicially created concepts is particularly disfavored when construing the Bankruptcy Code. Kelly v. Robinson, 479 U.S. 36, 47, 107 S.Ct. 353, 359, 93 L.Ed.2d 216 (1986).[2]
 
 
 12
 In determining the priority of administrative expenses, a series of sections are applicable. Section 726 instructs that in a Chapter 7 liquidation the corpus of the estate is distributed according to the priorities of section 507.[3] Section 507 in turn directs that first priority is given to administrative expenses:
 
 
 13
 (a) The following expenses and claims have priority in the following order:
 
 
 14
 (1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.
 
 
 15
 . . . . .
 
 
 16
 11 U.S.C. Sec. 507. Section 503 defines administrative expenses as including "the actual, necessary costs and expenses of preserving the estate" as well as postpetition taxes and penalties associated with those taxes:
 
 
 17
 (a) An entity may file a request for payment of an administrative expense.
 
 
 18
 (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--
 
 
 19
 (1)
 
 
 20
 (A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;
 
 
 21
 (B) any tax--
 
 
 22
 (i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or
 
 
 23
 (ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and
 
 
 24
 (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph;
 
 
 25
 . . . . .
 
 
 26
 11 U.S.C. Sec. 503.
 
 
 27
 No provision of the Code specifically provides for the payment of interest on administrative expenses. Section 726 is the only provision which expressly provides for interest:
 
 
 28
 (a) Except as provided in section 510 of this title, property of the estate shall be distributed--
 
 
 29
 . . . . .
 
 
 30
 (5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection;
 
 
 31
 . . . . .
 
 
 32
 11 U.S.C. Sec. 726.
 
 
 33
 Section 726(a)(5), the fifth priority, apparently codifies the "solvency exception" developed by case law prior to the enactment of the Bankruptcy Code. In re Boston & Maine Corp., 719 F.2d 493, 496 (1st Cir.1983), cert. denied sub nom. City of Cambridge v. Meserve, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984). Under this exception, where the debtor ultimately proves solvent, a balance of the equities dictates that creditors may receive any surplus, including claims for interest arising postpetition, ahead of payment to the debtor. City of New York v. Saper, 336 U.S. 328, 332 n. 7, 69 S.Ct. 554, 556 n. 7, 93 L.Ed. 710 (1949).[4] The legislative history states that section 726(a)(5) "provides that postpetition interest on prepetition claims is ... to be paid to the creditor." S.Rep. No. 95-989, 95th Cong., 2d Sess. 5, reprinted in 1978 U.S.Code Cong. & Admin.News, 5787, 5883. Whether section 726(a)(5) may be applied to claims for postpetition interest on claims arising postpetition is arguably ambiguous.[5] The legislative history is barren of any mention of according interest priority on trade claims pursuant to section 726(a)(5).
 
 
 34
 It is noteworthy that the right of an administrative claimant to interest is not specifically provided for in 11 U.S.C. Sec. 503(b)(1). Rather, if a right to such postpetition interest is to be found, it must be derived from a broad interpretation of that section's use of the term "including." As is evident from the Code's "Rules of Construction," the use of the word "including" is not intended to be limiting. 11 U.S.C. Sec. 102(3). Thus, by implication, Congress did not intend section 726 to be exhaustive, suggesting that the enumerated category for administrative expenses does not necessarily preclude judicial construction to permit other claims reasonably demonstrated to be "actual, necessary" costs of administration, including interest.[6] See In re Bergin Corp., 77 B.R. 210, 212 (Bankr.E.D.Wis.1987); In re Callister, 15 B.R. 521, 526 (Bankr.D.Utah 1981).
 
 
 35
 Despite the expansiveness with which the administrative expense category may be treated, such judicial construction is limited by the countervailing doctrine that section 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors. Otte v. United States, 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974). In determining how to best preserve the estate, two factors must be balanced: "maintaining the estate in as healthy a form as possible for the benefit of creditors while allowing essential costs of administering an ongoing business venture to be paid up front, thereby giving the debtor its best shot at emerging as a vital concern." In re Dant & Russell, Inc., 853 F.2d 700, 707 (9th Cir.1988). Thus, a balance must be struck between the goal of maximizing the estate and the goal of encouraging on-going business with third parties to facilitate the continued operations of the business, and thus the reorganization. Id. at 706-07. That balance may never be struck to denigrate the clear intent of section 503(b)(1)(A) which is to satisfy the actual and necessary costs of preserving the estate. Although section 503(b) should be read narrowly to preserve the debtor's scarce resources,[7] the ultimate goal of Chapter 11 is to marshall those resources to provide the best possible opportunity for a successful rehabilitation which will ultimately redound to the benefit of all creditors.
 
 B. Case law
 
 36
 A survey of cases construing the Bankruptcy Code offers little guidance; the diversity of approaches indicates the complexity of the issue. One line of decisions has denied claims for interest on administrative expense claims. See In re Fred Swain, 97 B.R. 660, 661-62 (Bkrtcy.S.D.Fla.1989) (denying administrative claim status to postpetition interest, liquidated damages and attorneys' fees on an administrative expense claim premised on the lack of Congressional intent to award such interest); In re Goldblatt Bros., Inc., 61 B.R. 459, 463 (Bankr.N.D.Ill.1986) (while indicating that as a rule postpetition interest is prohibited found that creditor was entitled to interest on implied trust theory); In re John Clay, 43 B.R. 797, 812 (Bankr.D.Utah 1984) (denying interest on postpetition deliveries of sheep accorded administrative expense priority premised on absence of language in the Code permitting such interest). One decision has indicated that, barring an express contract, interest is not ordinarily entitled to administrative expense priority, absent extraordinary equities favoring its award. In re American International Airways, Inc., 77 B.R. 490, 494-95 (Bankr.E.D.Pa.1987).
 
 
 37
 Another line of cases has allowed interest to accrue on allowed administrative claims where authorized by express statutory or contractual authority. See, e.g., In re Churchill, 109 B.R. 863, 864-65 (Bankr.S.D.Ill.1990); In re Becker, 51 B.R. 975, 979 (Bankr.D.Minn.1985); In re Island Aviation, Inc., 35 B.R. 20, 22-23 (Bankr.D.Haw.1983). At least one decision has held that because interest is an integral part of the underlying administrative expense, it should be accorded administrative expense priority and awarded at the statutory rate. In re Mesa Refining, Inc., 66 B.R. 36, 38-39 (Bankr.D.Colo.1986). Finally, one decision has held that the propriety of interest as an administrative expense requires a case by case factual analysis. In re Far West Corp., 120 B.R. 551, 555 (Bankr.E.D.Cal.1990).
 
 
 38
 In light of the ambiguity of the statute as well as current case law, we next consider this Court's decision in In re Allied Mechanical Serv., Inc., 885 F.2d 837 (11th Cir.1989) as well as prior law for guidance. Accordingly, we turn to another set of administrative claims, interest on postpetition taxes, to determine whether such claims provide a suitable analogy.
 
 C. The Tax Cases
 
 39
 Varsity urges that the reasoning of this Court in In re Allied Mechanical Serv., Inc., 885 F.2d 837 (11th Cir.1989) controls. This Court in In re Allied Mechanical held that the government was entitled to administrative expense priority on its claim for interest on postpetition tax liability, relying primarily on the Supreme Court's decision in Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). Id. at 839. Key to the decision was that under prior law, as articulated in Nicholas, interest on postpetition tax liability was accorded administrative expense priority, although the Bankruptcy Act, like the Code, did not explicitly so provide. Id. Thus, In re Allied Mechanical rested upon the principle that guides our decision today: absent affirmative Congressional intent to the contrary, judicially created doctrines under prior law remain viable, with silent abrogation particularly disfavored. See Kelly v. Robinson, 479 U.S. 36, 47, 107 S.Ct. 353, 359, 93 L.Ed.2d 216 (1986); Midlantic National Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986).
 
 
 40
 Other courts examining the issue have divided over the treatment of interest on tax liability. A majority of the cases accord administrative expense priority. See, e.g., In re Flo-Lizer, Inc., 916 F.2d 363, 366-67 (6th Cir.1990); In re Mark Anthony Construction, 886 F.2d 1101, 1108 (9th Cir.1989); In re Allied Mechanical Serv., Inc., 885 F.2d 837, 839 (11th Cir.1989); United States v. Friendship College, Inc., 737 F.2d 430, 432-33 (4th Cir.1984); In re Stainless Processing Co., 98 B.R. 913 (Bankr.N.D.Ill.1989); In re Swolsky, 97 B.R. 348 (Bankr.N.D.Ohio 1989); In re Injection Molding Corp., 95 B.R. 313 (Bankr.M.D.Pa.1989); In re Precise Tool & Die Co., Inc., 93 B.R. 586 (Bankr.N.D.Ohio 1988); In re Roy Amerson, Inc., 90 B.R. 526 (Bankr.M.D.Fla.1988); In re PATCO Photo Corp., 82 B.R. 192 (Bankr.E.D.N.Y.1988); In re Bergin Corp., 77 B.R. 210 (Bankr.E.D.Wis.1987); In re Associated Air Serv., Inc., 75 B.R. 47, 48-50 (Bankr.S.D.Fla.1987); In re Mall Food Serv. Corp., 75 B.R. 639 (Bankr.E.D.Mo.1987); In re Patch Press, Inc., 71 B.R. 345, 348-50 (Bankr.W.D.Wis.1987); In re Allen, 67 B.R. 46 (Bankr.W.D.N.Y.1986); In re General Polymerics Corp., 54 B.R. 523, 524-26 (Bankr.D.Conn.1985); In re Pharmadyne Laboratories, Inc., 53 B.R. 517, 519-20 (Bankr.D.N.J.1985); In re Sunset Enter., 49 B.R. 296 (Bankr.W.D.Va.1985); In re Thompson, 67 B.R. 1, 2-3 (Bankr.N.D.Ohio 1984); In re Venable, 48 B.R. 853 (Bankr.S.D.N.Y.1985); and In re Razorback Ready-Mix Concrete Co., 45 B.R. 917, 926 (Bankr.E.D.Ark.1984), rev'd in part, 80 B.R. 949, 950 (Bankr.W.D.Ark.1987).
 
 
 41
 In light of the ambiguity of the legislative history surrounding interest on tax liabilities, these cases rely upon the articulation of prior law in Nicholas. Fueling these cases is the belief that Congress, despite striking the Senate version of the Code which expressly would have authorized the collection of interest, meant to implicitly retain such an allowance, either as part of the tax itself or as a natural concomitant of a "fine, penalty, or reduction in credit" per Sec. 503(b)(1)(C). These cases have thus refused to interpret Congressional inaction, or silence as constituting a repudiation of prior law.[8]
 
 
 42
 Some courts have reached a different result. Illustrating the controversy and uncertainty that the legislative history's ambiguity has generated, a number of cases have refused to accord administrative expense priority for interest on tax liabilities.[9] See, e.g., In re Luker, 148 B.R. 946 (Bankr.N.D.Ok.1992); In re Compass Marine Corp., 146 B.R. 138 (Bankr.E.D.Pa.1992); In re Mansfield Tire & Rubber Co., 73 B.R. 735, 740 (Bankr.N.D.Ohio 1987); In re Hirsch-Franklin Enterprises, Inc., 63 B.R. 864, 869-71 (Bankr.M.D.Ga.1986); In re Lumara Foods, Inc., 50 B.R. 809, 810 (Bankr.N.D.Ohio 1985); In re H & C Enterprises, 35 B.R. 352 (Bankr.D.Idaho 1983); and In re Stack Steel & Supply Co., 28 B.R. 151, 155-56 (Bankr.W.D.Wash.1983). Cf. In re Boston & Maine Corp., 719 F.2d 493, 498-502 (1st Cir.1983), cert. denied sub nom. City of Cambridge v. Meserve, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984) (interest disallowed where accumulation of interest was directly attributable to court order deferring payment of all postpetition taxes); In re Mansfield Tire & Rubber Co., 85 B.R. 437 (Bankr.N.D.Ohio 1987) (interest disallowed on postpetition taxes where state law would not permit interest had bankruptcy never been filed).
 
 
 43
 We continue to embrace the result and reasoning in In re Allied Mechanical as representing the better approach in light of prior law as articulated in Nicholas. We now examine Nicholas as well as other prior law to determine whether the rationale of Nicholas may be fairly read to favor administrative expense priority for interest attendant to trade debts.
 
 D. Prior Law
 
 44
 The Bankruptcy Act, like the Code, had no provision specifically permitting post-bankruptcy interest on claims in general or on tax claims in particular.[10] Under the Act, the courts adhered to the equitable principle that the accrual of interest was suspended with the filing of the petition. Sexton v. Dreyfus, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911). As explained by Justice Holmes in Sexton, this equitable principle, derived from a well-established tenet of English law, operates to fix the moment when the affairs of the debtor are concluded.[11] Id. at 344, 31 S.Ct. at 257. Given that all claims do not bear the same rate of interest, the rule suspends accrual at filing under the rationale that "[a]s this delay was the act of law, no one should thereby gain an advantage or suffer a loss." American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 266, 34 S.Ct. 502, 504, 58 L.Ed. 949 (1914). In addition to avoiding unfairness as between competing creditors, the denial of postpetition interest on prepetition claims also avoided the administrative inconvenience of recomputation of interest. Bruning v. United States, 376 U.S. 358, 362, 84 S.Ct. 906, 908-09, 11 L.Ed.2d 772 (1964). As the Supreme Court explained:
 
 
 45
 Exaction of interest, where the power of a debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment--a delay necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved.... 'it is a necessary incident to the settlement of the estate.'
 
 
 46
 Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946) (quoting Thomas v. Western Car Co., 149 U.S. 95, 117, 13 S.Ct. 824, 833, 37 L.Ed. 663 (1893)).
 
 
 47
 Denial of postpetition interest on prepetition claims was not an ironclad rule, and over time, exceptions arose. The first, the "solvency exception" discussed supra, provided that where an estate had sufficient assets to pay all claims in full, creditors would receive postpetition interest before any surplus would be returned to the bankrupt. See City of New York v. Saper, 336 U.S. 328, 332, n. 7, 69 S.Ct. 554, 555, n. 7, 93 L.Ed. 710 (1949). A second exception allowed dividends and interest earned by securities held by the creditor as collateral to be applied to postpetition interest. Id. A third exception of more doubtful provenance provided interest for oversecured claims. See United States v. Ron Pair Enterprises, 489 U.S. 235, 246, 109 S.Ct. 1026, 1033, 103 L.Ed.2d 290 (1989). Far from being rigid categories, each of these exceptions represented the development by courts of flexible guidelines for the exercise of their equitable powers. Id. at 248, 109 S.Ct. at 1034. Animating the development of such guidelines was the underlying equitable principle first articulated by the Supreme Court in Vanston:
 
 
 48
 It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor.
 
 
 49
 Vanston, supra, 329 U.S. at 165, 67 S.Ct. at 241.
 
 
 50
 The Trustee urges that this articulation of prior law governing interest on prepetition claims should govern the outcome of the decision today. Were it not for the Supreme Court's decision in Nicholas, we would be inclined to agree. Nevertheless, because that decision expressly addresses the award of interest on claims arising postpetition and during a reorganization or arrangement, as opposed to other prior law which addresses the propriety of postpetition interest on prepetition claims, Nicholas guides our analysis.
 
 
 51
 The Supreme Court in Nicholas addressed the question of whether to permit interest on taxes incurred during a corporate arrangement under Chapter XI of the Bankruptcy Act which was superseded by a bankruptcy proceeding. The context of Nicholas is analogous to the instant context--i.e., a debt incurred during a Chapter 11 reorganization, which is superseded by a conversion to Chapter 7. Tracing the prior law, the Nicholas Court concluded that prior decisions concerning the suspension of interest on prepetition claims "reflect[ed] the broad equitable principle that creditors should not be disadvantaged vis-a-vis one another by legal delays attributable solely to the time-consuming procedures inherent in the administration of the bankruptcy laws." 384 U.S. at 683, 86 S.Ct. at 1679. The Court, nevertheless, while recognizing the strong considerations of equity and administrative convenience underpinning this rule, declined to treat identically interest on claims arising prepetition and those arising postpetition during a period of arrangement:
 
 
 52
 To be sure, the amount of interest that accumulates on a debt incurred during a Chapter XI arrangement depends upon the duration of a proceeding that takes place under the direction and authority of the bankruptcy court. But interest claimed on such a debt does not arise through a "delay" of the law in any meaningful sense. The underlying obligation of the debtor in possession is incurred as part of a judicial process of rehabilitation of the debtor that the procedures of Chapter XI are designed to facilitate. Interest on a current Chapter XI obligation is therefore different in kind from interest claimed during the arrangement period on a debt incurred before the Chapter XI petition was filed.
 
 
 53
 Id. at 684-85, 86 S.Ct. at 1680 (internal citation omitted).
 
 
 54
 The Court also determined that where the arrangement period is interrupted by the subsequent filing of a bankruptcy petition, the equitable rationale fueling the Court's earlier decisions would apply to suspend the accrual of interest. Id. at 685, 86 S.Ct. at 1680. Thus, the Court held that "the accumulation of interest on a debt must be suspended once an enterprise enters a period of bankruptcy administration beyond that in which the underlying interest-bearing obligation was incurred." Id. Thus, the treatment of interest would correspond to which of the three relevant periods of bankruptcy in which the claim arose.
 
 
 55
 The Court found support for this division from the threefold hierarchy of priorities for tax claims under the Bankruptcy Act. First, Sec. 63a(4) provided that taxes incurred in the pre-arrangement period received fourth priority in distribution. Second, taxes incurred during the arrangement period received first priority under Sec. 64a(1). Finally, the last sentence of Sec. 64a(1) subordinated arrangement expenses within that priority to expenses of the superseding bankruptcy administration.
 
 
 56
 With substantial refinements, the current Code parallels the threefold hierarchy of priorities for tax claims under the Bankruptcy Act. Section 507(a)(7), analogous to Sec. 63a(4), accords seventh priority to claims for taxes not entitled to administrative expense priority pursuant to Sec. 503(b)(1)(B). Section 507(a)(1) in turn parallels Sec. 64a(1) by according administrative expense priority to those taxes incurred by the estate as defined in Sec. 503(b)(1)(B).[12] See Sec. 726(a)(1). Section 726(b) duplicates Sec. 64a(1)'s subordination of arrangement expenses by providing that administrative expenses incurred during liquidation take precedence over reorganization expenses accorded administrative expense priority pursuant to Sec. 503(b).
 
 
 57
 In examining the applicability of the threefold hierarchy rationale to trade claims, the Code supports an analogy. Prepetition trade debts would generally be unsecured and under Sec. 726(a)(2) would be paid after distribution of Sec. 507 claims (which includes taxes distributed pursuant to Sec. 507(a)(7)). Trade debts incurred during Chapter 11 and accorded administrative expense priority, as are tax claims, would be distributed, pursuant to Sec. 726(a)(1), as first priority claims under Sec. 507(a)(1) as defined in Sec. 503(b)(1)(A). Finally, Sec. 726(b) subordinates administrative expenses, whether such expenses are trade debts satisfying the criteria of Sec. 503(b)(1)(A) or taxes as defined in Sec. 503(b)(1)(B), incurred during reorganization to those administrative expenses attendant to a Chapter 7 liquidation. Accordingly, the structure of the Code supports the thesis that the Nicholas rationale embraces trade debts as well as taxes.
 
 
 58
 The next question that arises is whether the policy rationale of Nicholas offers any explanation of whether taxes and trade debts should be treated differently. The Supreme Court articulated the policy rationale as follows:
 
 
 59
 The allowance of interest on Chapter XI debts until the filing of a petition in bankruptcy promotes the availability of capital to a debtor in possession and enhances the likelihood of achieving the goal of the proceeding the ultimate rehabilitation of the debtor. Disallowance of interest on Chapter XI debts might seriously hinder the availability of such funds and might in many cases foreclose the prospect of the debtor's recovery.
 
 
 60
 Nicholas, 384 U.S. at 687, 86 S.Ct. at 1681.
 
 
 61
 This policy applies with equal, if not greater, force in the context of trade debts. Whereas tax obligations accrue as a matter of law, the debtor and creditor voluntarily create trade debts to continue the business as a going concern. The taxing authority as an involuntary creditor does not choose its debtors; the presence or absence of interest is irrelevant to the government's "choice" to become a creditor. However, disallowance of interest may properly be viewed as a disincentive to voluntary creditors. Thus, the Nicholas rationale--that disallowance of interest may "hinder the availability" of funds--operates with greater force in the instant context involving voluntary creditors than in the Nicholas context itself. Further, there is no reason why postpetition creditors, whether involuntary or voluntary, should fund the debtor's rehabilitation with interest-free loans. As noted by the Supreme Court, "[i]n most situations, interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt." Bruning v. United States, 376 U.S. 358, 360, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964). A business unable to meet the current costs of doing business, costs which include the time value of money, will be unable ultimately to successfully reorganize and to continue as a going concern. Although reorganization may afford the debtor certain accommodations, such accommodations are not without limit:
 
 
 62
 'Although the fundamental goal of Chapter 11 is the ultimate rehabilitation of the debtor, the treatment of administrative expenses as debts entitled to first priority status suggests an overriding policy that a debtor's efforts to reorganize shall be financed by the debtor, not the debtor's post-petition creditors....'
 
 
 63
 In re Allied Mechanical Serv., Inc., 885 F.2d 837, 839 (11th Cir.1989) (quoting In re Gould & Eberhardt Gear Machinery Corp., 80 B.R. 614, 617 (D.Mass.1987)).
 
 
 64
 The structure of the Code also supports treating the interest on trade debts accorded administrative expense priority similarly to interest on tax claims accorded such priority. The Nicholas Court alluded to the principle that the Bankruptcy Act placed administrative expenses on a parity, including claims for taxes. 384 U.S. at 691, 86 S.Ct. at 1683. See, e.g., Davis v. Pringle, 268 U.S. 315, 317, 45 S.Ct. 549, 550, 69 L.Ed. 974 (1925); Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U.S. 152, 159-60, 32 S.Ct. 457, 460, 56 L.Ed. 706 (1912). The Code similarly provides that claims allowable pursuant to Sec. 503(b) as administrative expenses share equally without sub-priorities. 3 Collier on Bankruptcy p 503.03, at 503-16 (15th Ed.1993).[13] See In re Western Farmers Assoc., 13 B.R. 132, 134 (Bankr.W.D.Wash.1981) (and cases cited therein). The concept of parity for administrative expenses flows from the premise underlying the category. The threshold requirement for an administrative expense is that it be actual and necessary to the preservation of the estate; the benefit must run to the debtor and be fundamental to the conduct of its business. In re Continental Airlines, 146 B.R. 520, 526 (Bankr.D.Del.1992). Administrative expense priority prevents unjust enrichment from this benefit:
 
 
 65
 The principal purpose of according administrative priority to claims for benefit to the estate is to prevent unjust enrichment of the debtor's estate, rather than simply to compensate the claimant. Conceptually, the costs of administration are a kind of priority afforded to those who either help preserve and administer the estate or who assist with the rehabilitation of the debtor so that all creditors will benefit.
 
 
 66
 In re Coal-X Ltd. "76", 60 B.R. 907, 912 (Bankr.D.Utah 1986). To the extent that creditors otherwise on a parity are treated differently with respect to interest, the debtor is unjustly enriched. Thus, if one claimant is to be preferred over others, "the purpose should be clear from the statute." Nathanson v. NLRB, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952).
 
 
 67
 Thus, our analysis concludes that the language of the Code gives no guidance as to the priority of interest on administrative expense trade debts, that neither the statute nor the legislative history indicate a clear intent to abrogate the prior law, and thus that it is appropriate for us to look for guidance to the prior law. For the reasons discussed above, we conclude that the Nicholas rationale provides an appropriate analogy in the prior law.
 
 
 68
 However, the Trustee argues that the Seventh Circuit's decision in In re Brooks and Woodington, Inc., 505 F.2d 794 (7th Cir.1974), not Nicholas, represents prior law. Brooks held that accountants employed by the bankruptcy trustee were not entitled to an administrative expense claim for interest on their underlying claim for accountant's fees rendered on behalf of the estate.[14] The court's discussion of the interest issue was very cursory, with no reference to Nicholas, although denying interest accrued on claims incurred during the reorganization proceeding would directly contradict the Supreme Court's decision. Id. at 799. It is noteworthy that the argument for interest was not even raised until the reply brief, id., and that this fact was one of the grounds of the decision disallowing interest:
 
 
 69
 In the light of the generally prevailing bankruptcy rule applicable to interest-bearing claims and particularly in view of the manner in which the claim for interest has been asserted in this particular appeal, we hold that appellants are not to be allowed interest on the amount of their claim.
 
 
 70
 Id. (emphasis supplied). Further, the court's reference to the prevailing bankruptcy rule was obviously to the Sexton rule, although the court offered no explanation of why this rule represented a suitable analogy. Interest on postpetition administrative claims incurred during a period of reorganization implicates different policy considerations from the award of postpetition interest on prepetition claims. As articulated by the court in In re Far West Corp., 120 B.R. 551 (Bankr.E.D.Cal.1990):
 
 
 71
 The rationale for according certain postpetition claims priority status was to prevent the reorganization or administration of the estate from being jeopardized by a creditor's refusal to deal with the debtor postpetition while the policy considerations behind the general rule suspending the accrual of interest on prepetition claims were premised upon notions of equity and administrative convenience.
 
 
 72
 Id. at 554 (internal citations omitted). For the foregoing reasons, we decline to accord precedential value to the Brooks decision.
 
 
 73
 The Trustee also argues that the analogy to interest on postpetition taxes, and the analogy to Nicholas, is misplaced because first priority for such interest flows from Sec. 503(b)(1)(C) (specifically providing that penalties relating to an administrative expense claim for taxes carry the same priority as the tax). The Trustee observes that if Congress intended penalties attendant to taxes to carry the same priority as the tax, Congress must also have intended that interest attendant to taxes should carry the same priority. Finally, the Trustee notes that there is no provision similar to Sec. 503(b)(1)(C) from which we might infer a Congressional intent that interest on an administrative expense trade debt should carry the same priority as the trade debt. Although we acknowledge the inference from Sec. 503(b)(1)(C), and the absence of a similar provision with respect to administrative expense trade debts, we nevertheless conclude that the Nicholas rationale is applicable. At the time Nicholas was decided, there was no statutory provision similar to Sec. 503(b)(1)(C). Thus, the instant context, in which there is also no such similar statutory provision, is similar to the context addressed by the Supreme Court in Nicholas. We find that it is appropriate to employ the Nicholas rationale. Also, the Nicholas opinion uses language suggesting that the rationale applies generally to administrative expense "debts" and not merely to administrative expense "taxes". 384 U.S. at 687, 689, 86 S.Ct. at 1681, 1683. Finally, as discussed above, the similar structure of the relevant statutes and the similarity of policy concerns indicate that the analogy to Nicholas is appropriate.
 
 
 74
 In summary, because the language of the Code is silent, and the statute and legislative history indicate no clear intent to abrogate prior law, we look to the prior law. As indicated in the foregoing discussion, we conclude that the most reasonable reading of the prior law is that the priority accorded to interest on trade debts incurred as administrative expenses during Chapter 11 should be determined pursuant to the Nicholas rationale. Accordingly, we hold that interest on trade debts incurred as administrative expenses during Chapter 11 enjoys the same priority as the administrative expense itself, but that upon conversion to Chapter 7, the interest accruing thereafter enjoys only the fifth priority pursuant to Sec. 726(a)(5).
 
 II. The Right to Immediate Payment
 
 75
 Varsity argues that the district court erred in affirming the bankruptcy court's denial of its motion for immediate payment. The determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court. Because the bankruptcy court was aware of significant claims that held a potentially higher priority than those of Varsity, we readily conclude that the bankruptcy court did not abuse its discretion.
 
 CONCLUSION
 
 76
 Based on the foregoing, we affirm the district court's award of administrative expense priority for interest accruing during the Chapter 11 proceeding on Varsity's trade claims arising during that proceeding, with interest accruing after conversion entitled to fifth priority pursuant to Sec. 726(a)(5). We affirm the district court's denial of Varsity's motion for immediate payment of its administrative expense claims. Accordingly, the judgment of the district court is
 
 
 77
 AFFIRMED.
 
 
 
 *
 Honorable Steven D. Merryday, U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 The parties stipulated that Varsity Carpet Services, Inc., Textile Coating, Ltd., and Chem-Tech Finishers, Inc. held valid administrative claims in the respective amounts of $29,214.57, $11,583.55, and $3,782.82
 
 
 [2]
 As articulated by the Court in Midlantic National Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986):
 The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.
 Id. at 501, 106 S.Ct. at 759. This rule of statutory interpretation is particularly apt where the statutory provision at issue is ambiguous, where prior law reflected significant policy considerations of great longevity and importance, and where a proposed interpretation is in clear conflict with state or federal laws of great importance. United States v. Ron Pair Enterprises, 489 U.S. 235, 245, 109 S.Ct. 1026, 1032, 103 L.Ed.2d 290 (1989). Because this case implicates the factors articulated in Ron Pair, we will accordingly utilize the rule of statutory construction cited in Kelly and Midlantic.
 
 
 [3]
 Section 726 provides in relevant part:
 (a) Except as provided in section 510 of this title, property of the estate shall be distributed--
 (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;
 11 U.S.C. Sec. 726.
 
 
 [4]
 The solvency exception traces its roots to bankruptcy practice in England, from which our law was derived. Saper, supra, 336 U.S. at 332 n. 7, 69 S.Ct. at 556 n. 7. See Sexton v. Dreyfus, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911)
 
 
 [5]
 At least one court has rejected the argument that section 726(a)(5) should apply solely to claims existing prior to the filing of the petition. See In re Riverside-Linden Inv. Co., 945 F.2d 320, 324 n. 1 (9th Cir.1991). The section's command that interest on a claim be paid "from the date of the filing of the petition," thus contemplating that a claim was in existence at the time of the filing of the petition, is in tension with the provision that interest shall be paid "on any claim under paragraph (1), (2), (3), or (4) of this subsection," which includes administrative expenses arising subsequent to filing. 11 U.S.C. Sec. 726(a)(5) (emphasis supplied)
 
 
 [6]
 The leading bankruptcy treatise supports this interpretation of section 503(b)'s categories as illustrative rather than exhaustive:
 While it is true that the court is not free to fashion additional priorities it ought not be assumed that the six designations are necessarily exclusive nor designed to cover every conceivable situation.... The court might well conclude there are to be allowed as administrative expenses claims not necessarily precisely covered by the provisions of section 503(b).
 
 
 [3]
 Collier on Bankruptcy, p 503.03 at 503-17
 
 
 [7]
 See In re Dant & Russell, Inc., 853 F.2d 700, 706-07 (9th Cir.1988); Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc., 789 F.2d 98, 101 (2d Cir.1986); and Southern Railway Co. v. Johnson Bronze Co., 758 F.2d 137, 140-43 (3d Cir.1985)
 
 
 [8]
 The final version of Sec. 503(b)(1)(B)(i) excluded the Senate bill's express provision that interest attendant to postpetition taxes be treated as an administrative expense. The legislative history addressing the compromise bill is silent as to why the Senate's specific provision for interest was omitted. 124 Cong.Rec. H 11,094-5 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978). Arguably, the deletion represented the recognition that prior law already provided for such priority, and that absent change, such law would continue to govern. The words providing for interest's priority would accordingly be surplusage. At issue then are the relative weights to be accorded disparate interpretations of Congressional inaction, i.e., whether Congress implicitly adopted prior law or rejected it by deleting proposed language that would have expressly adopted it. To the extent that the Trustee contends that this "confusion" in the legislative history distinguishes tax claims from trade debts, on which the legislative history is silent, this argument is without merit
 
 
 [9]
 Although the Sixth Circuit in In re United Trucking Service, Inc., 851 F.2d 159 (6th Cir.1988) remanded the issue of interest on a claim for postpetition damages, indicating in dicta that "allowance of interest is usually not 'appropriate,' " the continuing validity of that statement is questionable in light of the Circuit's recent decision permitting postpetition interest on tax liability in In re Flo-Lizer, Inc., 916 F.2d 363 (6th Cir.1990). The Ninth Circuit Bankruptcy Appellate Panel's recent ruling that an undersecured creditor awarded superpriority status was not entitled to interest in In re Peaches Records & Tapes, Inc., 102 B.R. 193 (9th Cir.B.A.P.1989), is likewise of uncertain value as guidance. First, the opinion purported to rely upon the general rule that administrative claims should not include interest as part of such claim, citing the Bankruptcy Appellate Panel's decision in In re Mark Anthony Construction, Inc., 78 B.R. 260 (9th Cir.B.A.P.1987), rev'd, 886 F.2d 1101, 1106 (9th Cir.1989) which was reversed. Further, the discussion of the law controlling interest on administrative claims is dicta. Finally, although the ultimate holding may be helpful by analogy, it is not dispositive because the issue before us involves the allowance of interest on an administrative as opposed to an undersecured claim, thus implicating different statutes and policy considerations
 
 
 [10]
 Except for two subdivisions of section 63, there was no specific provision in the statute specifically addressing the issue of postpetition interest. Bankruptcy Act Sec. 63a(1) covered interest owing on the date of the petition as provable debt. Section 63a(5) of the Act covered interest accruing between the date of the petition and the date a provable debt was reduced to judgment
 
 
 [11]
 As articulated by Justice Holmes:
 If, as in a well-known illustration of Chief Justice Shaw's, the whole matter could be settled in a day by a pie-powder court, the secured creditor would be called upon to sell or have his security valued on the spot, would receive a dividend upon that footing, would suffer no injustice, and could not complain.
 Id. at 344-45, 31 S.Ct. at 257 (internal citation omitted).
 
 
 [12]
 Cf. Sec. 507(a)(2) which accords second priority to "involuntary gap" creditors who under prior law had first priority. This priority includes taxes incurred during the conduct of the ordinary course of the debtor's business after a Chapter 11 has begun but before a trustee has been appointed
 
 
 [13]
 The exception to the parity rule is Sec. 507(b)'s grant of "superpriority" status to claims of secured creditors arising from the failure of the trustee to adequately protect their interests. Such claims have priority over every other claim accorded administrative priority pursuant to Sec. 507(a)(1) which incorporates Sec. 503(b)
 
 
 [14]
 The Brooks decision fails to specify the date on which the Chapter XI proceedings there were superseded by the bankruptcy administration. The opinion refers to the timing merely as following "shortly thereafter", i.e., after the initiation of Chapter XI proceedings in 1965. 505 F.2d at 794. The accounting fees at issue were incurred beginning in March 1966. Id. at 795. It is unclear whether any of the obligations were incurred during the Chapter XI proceeding itself. If no obligation at issue in Brooks was incurred during the Chapter XI proceedings themselves, Brooks would simply have no application at all to this case in which the obligation at issue was incurred during the Chapter 11 proceeding