**In re CHRIS–MARINE U.S.A., INC., Debtor.**

**No. 00–4010–3F1.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

May 7, 2001.

Ann Reid, Christopher M. Pietruszkiewicz, U.S. Department of Justice, Washington, DC, for United States.

Raymond R. Magley, Jacksonville, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Motion for Allowance of Administrative Expenses ("Motion for Administrative Expenses") filed by the United States of America ("the United States") on November 17, 2000. (Doc. 52.) The Court held an evidentiary hearing on the Motion for Administrative Expenses on April 19, 2001, and took the matter under advisement. (Doc. 110.) Upon review of the evidence admitted and upon review of the arguments of counsel, the Court finds it appropriate to deny the Motion for Administrative Expenses.

### FINDINGS OF FACT

At the April 19, 2001 hearing, counsel for Chris–Marine U.S.A., Inc. ("Debtor") and counsel for the United States agreed to enter the evidence admitted in the March 22 and 23, 2001 hearing on the United States' Motion to Dismiss. (Doc. 92.) Therefore, the Court reiterates the following relevant findings of fact as established in the Findings of Fact and Conclusions of Law on the Motion to Dismiss. (Doc. 99.)

Debtor is a Florida corporation fully owned by Chris–Marine International Ltd. ("Chris–Marine International"), a corporation based in the Cayman Islands. Chris–Marine International is owned by the probate estate of the late Alv B. Christensson, co-founder of a Swedish corporation, Chris–Marine AB, and its various affiliates, including Debtor.

Since 1980, Debtor has operated as a sort of referral service for diesel mechanics specializing in the repair of moderate-to-large scale diesel engines in shipping and cruise vessels and in power plants. Debtor has about twenty mechanic employees and uses the services of twenty or so independent mechanics. Debtor sends these mechanics out into the field to repair diesel engines in situ. These mechanics either own their own tools or use the tools provided to them by the owners of the engines they are sent to repair.

Debtor also maintains a twenty-thousand square foot workshop located at 732 Parker Street in Jacksonville, Florida, where Debtor machines diesel engine parts for repair using specialized grinding machines manufactured by Chris–Marine AB.

In December 1992, the Internal Revenue Service ("IRS") began investigating Debtor after Debtor's 1990 tax return raised several red flags.

The IRS issued four informal Information Document Requests to Debtor during late 1992 and early 1993, seeking documents related to transactions between Debtor and Chris–Marine International's other subsidiaries.

A discovery dispute developed, and the IRS elected to pursue its formal discovery options.

On September 17, 1993, the IRS issued a Formal Document Request ("FDR") pursuant to 26 U.S.C. § 982(c)(1) seeking production of certain documents allegedly relevant to its investigation of Debtor.

On November 17, 1993, the IRS issued another FDR. The second FDR sought production of the same documents as the first for a different period.

In late 1993 and early 1994 Debtor filed two petitions, Case No. 93–1626–Civ–J–16 and Case No. 94–121–Civ–J–16, in the United States District Court, Middle District of Florida ("the district court"), to quash the FDRs pursuant to 26 U.S.C. § 982(c)(2)(A).

On January 20, 1995, the Middle District of Florida magistrate judge ("the magistrate") issued a Report and Recommendation finding that Debtor's petitions to quash the FDRs should be denied and that Debtor should be ordered to comply with the FDRs.

On March 22, 1995, the district court adopted the magistrate's findings and recommendations. *See Chris–Marine USA, Inc. v. United States,* 892 F.Supp. 1437 (M.D.Fla.1995).

Debtor did not produce the documents requested as ordered by the district court. According to Kent Ekenberg ("Ekenberg"), Debtor's vice president, Debtor and Chris–Marine International's various subsidiaries do not have and never have had possession of documents of the kind the IRS seeks in the two FDRs.

On March 4, 1998, the magistrate issued a Report and Recommendation finding that Debtor should be held in contempt for failure to produce the documents sought by the FDRs. (United States Ex. 7.) The magistrate recommended that Debtor be fined $2,500.00 per day ("the *per diem* fine") and that Ekenberg be incarcerated until Debtor produces the requested documents.

On May 11, 1998, the district court approved the magistrate's March 4, 1998 Report and Recommendation, and the $2,500.00 *per diem* fine began to accrue.

On July 22, 1998, the magistrate issued a Report and Recommendation finding that Debtor had not purged itself of contempt, that Debtor should pay the United States' fees and costs, and that a warrant should be issued for Ekenberg's arrest. (United States Ex. 8.)

On March 19, 1999, the district court approved the magistrate's findings of continuing contempt and ordered the continuing accrual of the $2,500.00 *per diem* fine. (United States Ex. 10.) The district court entered a judgment for the United States in the amount of $782,500.00, the *per diem* fine accrued from May 11, 1998 to March 19, 1999. (Debtor's Ex. 2.)

On May 23, 2000, Debtor voluntarily filed a petition for Chapter 11 bankruptcy protection. According to Ekenberg, the filing was precipitated by Debtor's inability to purge its contempt of the district court's orders combined with its inability to pay the accruing *per diem* fine. Ekenberg testified that Debtor pays all of its other creditors in the ordinary course of business.

On September 20, 2000, Debtor filed its Disclosure Statement and Plan of Reorganization. (Debtor's Ex. 4 and 5.) Debtor's Plan provides for payment of $800,000.00 at eight percent interest over sixty-seven months to the general unsecured class of claims, which is dominated by the United States' contempt judgment. The Plan does not make provision for payment of any unpaid taxes or for treatment of any portion of the contempt judgment as an administrative expense. Under the Plan, Chris–Marine International's equity in the reorganized entity would be auctioned off at the confirmation hearing, with Chris–Marine International entering a beginning minimum bid of $25,000.00. The Plan provides for the assumption of all executory contracts.

On November 17, 2000 the United States, through the Department of Justice, filed a Proof of Claim in the amount of $1,860,000.00 for the accrued *per diem* fine.

On November 17 the United States also filed the Motion for Administrative Expenses. (Doc. 52.) The United States asserts in this Motion that the amount of the *per diem* fine accruing postpetition should be treated as an administrative expense under 11 U.S.C. § 503(b).

On December 14, 2000, the Court entered an Order approving Debtor's Disclosure Statement and scheduling a confirmation hearing for April 19, 2001. (Doc. 63.)

On April 19, 2001, the Court held a hearing on confirmation and on the Motion for Administrative Expenses. The Court continued the confirmation hearing and entertained the Motion for Administrative Expenses.

The United States argues that the amount of the *per diem* fine accruing postpetition should be treated as an administrative expense under § 503(b) because to do otherwise would allow Debtor to flaunt the orders of the district court.

Debtor counters that the postpetition-accrued *per diem* fine should not be treated as an administrative expense because it does not fit within any of the established § 503(b) categories of administrative expenses.

## CONCLUSIONS OF LAW

### I. LEGAL STANDARD FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES

#### A. General standard for allowance of administrative expenses: 11 U.S.C. § 503

■ In determining whether or not to allow a portion of a claim as an administra-

tive expense, the Court must adhere to 11 U.S.C. § 503(b). Section 503(b) provides, in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ...

11 U.S.C. § 503(b) (2001). Section 503(b) should be narrowly construed in order to maximize the value of an estate for the benefit of all unsecured creditors. *See Varsity Carpet Services, Inc. v. Richardson (In re Colortex Industries, Inc.)*, 19 F.3d 1371, 1377 (11th Cir.1994).

Generally, in order for a claim to be allowed under § 503(b) the claimant must have conferred some benefit on the estate. *See In re Motel Investments*, 172 B.R. 105, 107 (Bankr.M.D.Fla.1994). However, the Eleventh Circuit has created a narrow exception to this benefit requirement for certain regulatory expenses related to the postpetition operation of an estate. *See id.*

## B. Standard for allowance of a regulatory penalty as an actual, necessary cost of preserving the estate: *NP Mining*

Postpetition-accruing penalties for a postpetition violation of state law may be treated as "actual, necessary costs and expenses of preserving the estate" even though such penalties do not directly benefit the estate if such penalties result from violations ordinarily incident to the continuing operation of a debtor's highly regulated business. *See Alabama Surface Mining Comm'n v. NP Mining Co., Inc. (In re NP Mining Co., Inc.)*, 963 F.2d 1449, 1455 (11th Cir.1992). In *NP Min-*

*ing*, the Court of Appeals specifically found that punitive fines accruing postpetition for postpetition violations of mining regulations by a debtor operating a strip mine should be treated as administrative expenses under § 503(b)(1)(A). *See id.* "[W]e base our decision on the federal policy ... that trustees 'operate' an estate in compliance with state law ... we hold that the penalties in question receive first priority, but only to the extent that they were incurred as a consequence of mining operations after the bankruptcy petition was filed and while the business was still 'operating.'" *Id.* at 1453. The Court of Appeals noted that, for debtors operating businesses in highly regulated atmospheres, regulatory penalties must be considered an ordinary cost of staying in business postpetition. *See id.* at 1455. In *Motel Investments* this Court summarized the rule of *NP Mining* thusly:

> The [*NP Mining* ] Court held that ... administrative expenses are not limited only to expenses which benefit the estate but, in cases involving heavily regulated industries where compliance with regulations and payment of penalties for non-compliance is a necessary incident of doing business, penalties for noncompliance may be administrative expenses of the estate.

*Motel Investments*, 172 B.R. at 107.

The Court of Appeals in *NP Mining* grounded its holding on the policy, codified in 28 U.S.C. § 959, that a trustee or debtor-in-possession must manage and operate an estate in compliance with state law. *See NP Mining*, 963 F.2d at 1458. "We find that a policy of ensuring compliance with state law is sufficient justification to place civil penalties for postpetition mining operations in the category of the 'some cases' in which 'costs ordinarily incident to operation of a business' ... are accorded

administrative expense priority." *Id.* (citation omitted).

## II. APPLICATION TO THE INSTANT CASE

The Court finds that the postpetition-accruing *per diem* fine should not be allowed as an administrative expense because it does not fit the small, novel category of "regulatory administrative expenses" created by *NP Mining.*

The Court specifically finds that the *per diem* fine accruing postpetition should not be treated as a § 503(b) administrative expense because it is not a cost ordinarily incident to the postpetition management or operation of Debtor's business. The *per diem* fine stems from a prepetition discovery violation, not from postpetition non-compliance with some regulation of the diesel engine mechanic-referral and parts-repair industries. Such discovery fines do not normally arise during the ordinary management or operation of a diesel repair firm, and therefore cannot be considered typical, necessary costs of continuing operations in compliance with state law such that the Court should deplete the estate for their full satisfaction.

### CONCLUSION

The Court finds that the *per diem* fine accruing postpetition should not be treated as an administrative expense because it does not qualify as an actual, necessary cost or expense of preserving Debtor's estate under § 503(b) or established case law.

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.