**In re RIGHT TIME FOODS, INC., Debtor.**

No. 00–2634–3F1.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 6, 2001.

Robert Altman, Palatka, FL, for Debtor.

Richard Blackstone Webber II, Orlando, FL, for Blue Cross and Blue Shield of Florida, Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Motion for Allowance and Payment of Chapter 11 Administrative Priority Expense Claim ("Motion for Administrative Expenses") filed by Blue Cross and Blue Shield of Florida, Inc. ("BCBS") on February 20, 2001. (Doc. 79.) On May 3, 2001, the Court held a hearing on the Motion for Administrative Expenses and took the matter under advisement. (Doc. 83.) Upon review of the arguments and submissions of counsel, the Court finds it appropriate to deny BCBS' Motion for Administrative Expenses.

### FINDINGS OF FACT

The facts of this matter are not in dispute. The parties chose to proffer the facts in the form of statements by counsel rather than by submitting evidence.

At some point prior to the filing of the petition, Right time Foods, Inc. ("Debtor") entered into a Small Group Reform Preferred Patient Care Co-payment Point of Service Contract ("the Contract") with BCBS.

Under the Contract, Debtors' employees would be provided with health insurance by BCBS. Debtor was to pay $1,114.00 per month for the BCBS coverage.

The parties agree that the contract was executory in nature.

The Contract provided for forty-five day written notice of termination.

On April 5, 2000, Debtor filed a voluntary petition for Chapter 11 bankruptcy protection.

Between April 2000 and October 2000, Debtor paid the $1,114.00 monthly payments to BCBS.

Debtor did not make the November 2000 payment.

On either November 8, 2000 or November 18, 2000, Debtor sent a letter to BCBS expressing Debtor's desire to terminate the Contract.

On February 20, 2001, BCBS filed the instant Motion for Administrative Expenses. (Doc. 79.) BCBS sought allowance and payment of an administrative expense priority claim in the amount of $4,456.00 for the unpaid November 2000, December 2000, January 2001, and February 2001 monthly Contract payments.

BCBS admits that Debtor had no employees during November 2000, December 2000, January 2001, and February 2001.

On February 20, 2001, BCBS also filed a Motion to Compel Assumption or Rejection of Unexpired Executory Contract as required by 11 U.S.C. § 365. (Doc. 78.)

At the hearing on the Motion for Administrative Expenses on May 3, 2001, BCBS argued that it should be allowed a claim for the unpaid Contract payments because the Contract had not been terminated and/or rejected under § 365 until after those payments came due. BCBS further contended that the expenses incurred in maintaining Debtor's employee's insurance coverage between the letter of intent to terminate and the termination of the contract after the forty-five day notice period and/or rejection of the Contract under § 365 constitute an actual, necessary cost or expense of preserving the estate under 11 U.S.C. § 503(b)(1)(A). Debtor countered that it has no obligation to pay the installments at issue because it effectively terminated and rejected the Contract upon

sending the letter of intent to terminate. Debtor further asserted that the costs of maintaining employee coverage from BCBS during the forty-five day notice period are not actual, necessary costs or expenses of preserving the estate because the Debtor did not employ anyone during the period when those costs accrued.

On May 14, 2001, the Court entered an Order granting BCBS' Motion to Compel Assumption or Rejection and rejected the Contract. (Doc. 85.)

On June 1, 2001, BCBS submitted a Memorandum of Law in support of the Motion for Administrative Expenses. In its Memorandum BCBS scaled back its administrative expense priority claim to $2,228.00 for the two payments that came due and went unpaid in November 2000 and December 2000, during the running of the forty-five day notice period before termination.

On June 1, 2001, Debtor also filed a Memorandum of Law in support of its position. Debtor conceded in its Memorandum that BCBS should be allowed a general unsecured claim for the unpaid November 2000 and December 2000 Contract installments.

## CONCLUSIONS OF LAW

The sole question before the Court is a straightforward one: is the portion of BCBS' claim stemming from the delinquent November 2000 and December 2000 Contract payments entitled to treatment as a first-priority administrative expense under § 503(b)(1)(A) and 11 U.S.C. § 507(a)(1)?

## I. STANDARD FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES UNDER 11 U.S.C. § 503(b)

Section 503(b) provides, in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate . . .

11 U.S.C. § 503(b) (2001). Section 507(a) provides, in relevant part:

(a) The following expenses and claims have priority in the following order:

(1) First, any administrative expenses allowed under section 503(b) of this title . . .

11 U.S.C. § 507(a) (2001).

A postpetition expense may only qualify as an actual, necessary expense of preserving the estate to the extent that the incurring of such expense conferred some concrete benefit upon the estate. *See Broadcast Corp. of Georgia v. Broadfoot (In re Subscription Television of Greater Atlanta)*, 789 F.2d 1530, 1532 (11th Cir. 1986). It is not enough that the incurring of an expense secures a potential benefit or maintains a right to obtain future benefit for an estate. *See id.* In order for a claim on a postpetition expense to be allowed as an *administrative priority* claim, an estate must actually make beneficial use of any value received in exchange for the incurring of the expense. *See id.* As the *Subscription Television* court put it,

That which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense. That which is thought to have some potential benefit, in that it makes a business more likely salable, may be a benefit but is too speculative to be allowed as an "actual, necessary cost and expense of preserving the estate." *Id.*

The benefit inquiry is subjective and must be made on a case-by-case basis. *See Subscription Television*, 789 F.2d at 1532. In determining whether a concrete benefit is conferred in a particular case, a

court must keep in mind that § 503(b) should be narrowly construed in order to maximize the value of an estate for the benefit of all unsecured creditors. *See Varsity Carpet Services, Inc. v. Richardson (In re Colortex Industries, Inc.),* 19 F.3d 1371, 1377 (11th Cir.1994).

## II. APPLICATION TO THE INSTANT CASE

■ The Court finds that the incurring of the postpetition expenses at issue, namely the delinquent, pre-termination November 2000 and December 2000 Contract payments, did not confer any concrete benefit upon Debtor's bankruptcy estate and therefore are not actual, necessary costs or expenses of preserving the estate under § 503(b)(1)(A). Debtor incurred those expenses purely by operation of the Contract's notice provision rather than in an effort to secure a benefit to the estate. The estate did not benefit from what the expenses at issue "bought"—the forty-five day delay in termination of the Debtor's employee's health insurance—because the Debtor had no employees during the forty-five day period.

BCBS argues that "providing insurance coverage to employees prior to termination of the executory contract ... benefitted[sic] the estate ... [t]his benefit to the estate was necessary to keep the employees of the Chapter 11 debtor working for the debtor by providing post-petition health benefits as well as pay." BCBS' Mem. at 6. However, there were no employees to keep during the period when the estate incurred the unpaid expenses to maintain insurance. During the period that the employee health insurance provided an actual benefit—the period when Debtor had employees—Debtor paid the monthly installments. Debtor should have anticipated the date when it would no longer benefit from employee health insurance and notified BCBS of its intent to terminate about forty-five days before that date, so as to avoid accumulating insurance expenses any longer than necessary. However, the Court will not provide BCBS with administrative priority and thus injure the general unsecured creditors on account of that lack of foresight.

Therefore, the expenses accrued during the contractual forty-five day notice period do not qualify as actual, necessary costs and expenses of preserving the estate under § 503(b)(1)(A). BCBS' administrative expense priority claim stemming from those expenses will be disallowed.

## CONCLUSION

The Court finds that the expenses at issue are not actual and necessary costs of preserving the estate under § 503(b)(1)(A). Therefore, the Court will not accord the expenses at issue administrative expense priority under § 507(a)(1).

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.