**In re EZ PAY SERVICES, INC., a/k/a EZ Pay Health Care, a/k/a EZ Pay Dental, a/k/a EZ Pay Medical, Debtor.**

**No. 3:06–bk–2474–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 28, 2007.

EZ Pay Services, Inc., Pro se.

**ORDER ON APPLICATION BY TRUS-TEE TO BE ALLOWED TO PAY ADMINISTRATIVE EXPENSE CLAIM TO CHRISTOPHER L. SMOOT DBA COMPUTER INFOR-MATION SERVICES**

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court on March 13, 2007, and July 20, 2007, for an evidentiary hearing to consider the Application by Trustee to be Allowed to Pay Administrative Expense Claim to Christopher L. Smoot dba Computer Information Services.

An Objection to the Application was filed by Debra Distler, who is the sole stockholder and chief executive officer of the Debtor, EZ Pay Services, Inc.

In the Application, the Trustee asserts that he had employed Christopher L. Smoot, dba Computer Information Services (Smoot) as a computer forensics expert to recover certain information that had been erased from the Debtor's hard drives. The Trustee further asserts that Smoot spent hundreds of hours reviewing and recovering the information, and that the data obtained was very valuable for the estate. Consequently, the Trustee requests permission to pay Smoot the sum of $70,000.00 for his services as a necessary cost and expense of preserving the estate pursuant to § 503(b) of the Bankruptcy Code.

In her Objection to the Application, Debra Distler contends that Smoot should be required to establish his credentials, and that Smoot should also be required to prove that the value of his computer forensic services equaled the sum of $70,000.00.

**Background**

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on August 16, 2006. Robert Altman (the Trustee) was appointed as the Chapter 7 Trustee in the case.

Shortly after his appointment, the Trustee determined that the Debtor's computers should be examined for evidence of tampering. The Trustee was personally familiar with Smoot's knowledge and abilities with respect to computer technology, and initially hired Smoot solely to deter-

mine whether the information on the computers had been altered. (Transcript, March 13, 2007, hearing, p. 15).

When the Trustee originally contacted Smoot, "the estate had no money." Additionally, the Trustee did not anticipate at that time that the assignment would evolve into a large job. (Transcript, July 20, 2007, hearing, p. 11)(hereafter referred to as "Transcript," followed by the page number cited). Consequently, Smoot was not hired as a professional. On the contrary, the Trustee initially hired Smoot simply to review the Debtor's computers under his direct supervision. (Transcript, pp. 22–23)

The Debtor originally furnished seven hard drives to the Trustee for examination. (Transcript, pp. 10–11). The computers were taken to a building next to the Trustee's office, and Smoot began the process of inspecting the hard drives. (Transcript, pp. 13–14).

Smoot first determined that the seven computers had been tampered with. He testified that the hard drives had been "reformatted and installed an image file on top of them." Further, he determined that the information on the computers was "installed within a short period of time, which would be consistent with reinstalling an image file on top of a hard drive." (Transcript, p. 29).

Upon learning that the hard drives had been altered, the Trustee expanded the original assignment, and asked Smoot to recover the information that had been deleted or erased. (Transcript, p. 14).

During Smoot's investigation of the seven original hard drives, the Trustee and Smoot visited the Debtor's business premises and removed seven additional computers for examination. (Transcript, pp. 12, 32). According to Smoot, the additional computers were Apples that had been recently purchased and were still in service

by the Debtor in connection with its operations. (Transcript, p. 32).

Consequently, Smoot inspected a total of fourteen hard drives in the scope of his employment for the Trustee. He testified that the work was extensive and tedious, since the information had to be recovered "bit by bit" on each computer. Although he was able to work with several computers at once to save time because of the facilities provided by the Trustee, Smoot explained that the process was necessarily slow because of the danger of losing data. (Transcript, pp. 28, 30).

Smoot worked steadily on the project from September of 2006 until late that year. The Trustee testified that he personally observed Smoot working long hours on the recovery process during this period. According to the Trustee, Smoot reviewed approximately seven million bits of information to determine its worth to the estate. (Transcript, pp. 14–15).

Finally, as a result of Smoot's efforts, the Trustee testified that he was able to trace funds in the amount of $500,000.00 that had been transferred from the estate shortly before the bankruptcy petition was filed. (Transcript, p. 15). Based on the information retrieved, the Trustee has collected approximately $230,000.00 of the $500,000.00 transferred prepetition. (Transcript, p. 24). The Trustee also testified that he has recovered and sold a yacht for the benefit of the estate, and has obtained an additional $31,000.00 on account of a leased Mercedes. According to the Trustee, these collections were significantly expedited as a result of the information uncovered by Smoot. (Transcript, p. 17).

In total, the Trustee estimates that the estate has received the sum of $400,000.00 as a result of the services performed by Smoot. (Transcript, p. 23).

## Discussion

Section 507(a)(2) of the Bankruptcy Code provides that administrative expenses allowed under § 503(b) are entitled to payment as a second priority in bankruptcy cases. 11 U.S.C. § 507(a)(2). Generally, therefore, a claim permitted under § 503(b) is an allowance against the estate that receives a higher payment priority than most other claims.

■ The Trustee's Application in this case was filed pursuant to § 503(b) of the Bankruptcy Code. Section 503(b)(1) provides in part:

**11 USC § 503. Allowance of administrative expenses**

. . .

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate,

. . .

11 U.S.C. § 503(b)(1). To qualify as an allowed administrative expense under § 503(b)(1), it is generally held that the claim must have arisen postpetition and resulted from actions taken by the trustee that created a benefit to the estate. *In re Fortune Natural Resources Corporation,* 366 B.R. 558, 561 (Bankr.E.D.La.2007).

■ "In order for an expense to be allowed as an administrative claim, it must be actual and necessary to the preservation of the debtor's estate and must have been incurred in an effort to benefit the estate as a whole." *Park National Bank v. University Centre Hotel, Inc.,* 2007 WL 604936, at *5 (N.D.Fla.2007).

■ The Eleventh Circuit has interpreted § 503(b)(1) to require that the expense be "actual" and "necessary," and

also that it provide a concrete benefit to the debtor's estate. See *In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986). "In order for a claim on a postpetition expense to be allowed as an administrative priority claim, an estate must actually make beneficial use of any value received in exchange for the incurring of the expense." *In re Right Time Foods, Inc.,* 262 B.R. 882, 884 (Bankr.M.D.Fla.2001)(quoted in *In re Sports Shinko (Florida) Co., Ltd.,* 333 B.R. 483, 490 (Bankr.M.D.Fla.2005)).

■ In this case, the Court finds that Smoot's services were actual and necessary, and resulted in a concrete benefit to the estate.

As a preliminary matter, it is significant that the Trustee did not engage Smoot as a professional. The Trustee acknowledges that the estate did not have sufficient funds to hire a professional at the time that he initially contacted Smoot. Additionally, the Trustee testified that he did not anticipate a large assignment at the time that he hired Smoot. (Transcript, p. 11). He employed Smoot only to provide designated computer services to the estate under his direct supervision.

Consequently, the Trustee is asking for authority to pay Smoot pursuant to § 503(b)(1) of the Bankruptcy Code. Unlike § 503(b)(2), which relates to compensation paid to professionals, payment under § 503(b)(1) is not limited to claimants with any specific credentials or qualifications. *In re Lickman,* 273 B.R. 691, 700 (M.D.Fla.2002).

Accordingly, the Court first determines that the services performed by Smoot were actual and necessary for the estate, as required by § 503(b)(1).

Clearly, Smoot provided substantial services to the Trustee. The testimony es-

tablishes that Smoot received fourteen hard drives that had been used by the Debtor, that Smoot performed preliminary evaluations to determine whether any information on the drives had been altered, and that Smoot then performed extensive recovery functions to retrieve the deleted information. The testimony further establishes that Smoot dedicated long hours over many weeks to the project.

Smoot documented his services, in part, in a fourteen-page report prepared for the Trustee. (Doc. 220, Exhibit 1). The report, entitled "Forensic computer examination of EZ Pay Dental Services computer equipment," details his assignment and initial findings, and provides a technical summary of the information that Smoot reviewed on the hard drives.

Additionally, Smoot's services were necessary, in that the hard drives contained important information that was relevant to property of the estate. It is undisputed that attempts had been made to erase or conceal information on the hard drives. The recovery of the information was necessary to enable the Trustee to locate and administer valuable assets of the estate, and to understand the Debtor's prepetition transactions.

Second, the Court finds that Smoot's services provided a concrete benefit for the estate. The Trustee testified that he recovered approximately $400,000.00 as a result of Smoot's services. (Transcript, p. 23). The total recovery includes approximately $230,000.00 received from Debra Distler. According to the Trustee, for example, Debra Distler returned $201,000.00 after Smoot's findings enabled the Trustee to trace $500,000.00 that had been transferred prepetition. The total recovery also includes the proceeds of a yacht and leased Mercedes administered by the Trustee using information retrieved by Smoot.

(Transcript, pp. 15–17, 23–24; Docs. 274, 296).

▇ Finally, based on the record in this case, the Court finds that the compensation requested by Smoot is reasonable, and that Smoot should be paid the sum of $70,000.00 as set forth in his invoice dated October 3, 2006. (Doc. 220, Exhibit 2). The Trustee testified that Smoot charged for his services on a "per drive" basis. (Transcript, p. 20). In other words, Smoot examined fourteen computers for a total charge of $70,000.00, which equals the amount of $5,000.00 per hard drive.

Further, Smoot's invoice reflects that he spent a minimum of twenty hours examining each hard drive. (Doc. 220, Exhibit 2). At trial, Smoot testified that the hours spent reviewing the hard drives actually exceeded the hours set forth in his invoice, and that he performed other services for the Trustee that are not included in the invoice at all. (Transcript, pp. 27–28). Smoot testified that the job was a "massive undertaking," and the Trustee confirmed that the project encompassed numerous hours over many weeks. (Transcript, pp. 14–15, 28).

The Trustee also testified that he had obtained estimates from other data recovery services, and determined that "it would cost approximately $140,000.00 for the same work from a larger company." (Transcript, p. 18).

No substantial evidence was presented to dispute the ability of Smoot to perform the services he performed, the time required to perform those services, or the cost of similar services from other sources. Additionally, no evidence was presented to indicate that his findings were inaccurate or not beneficial to the estate.

In conclusion, the Court finds that Smoot's services were actual and necessary, and provided a substantial benefit to

the estate within the meaning of § 503(b)(1) of the Bankruptcy Code. The Court further finds that the compensation requested by Smoot is reasonable considering the extent of the services that he performed, the special knowledge required, and the benefit to the estate. Consequently, the Court concludes that the Trustee's Application to be Allowed to Pay Administrative Expense Claim to Christopher L. Smoot, dba Computer Information Services, should be approved.

Accordingly:

**IT IS ORDERED** that:

1. The Application by Trustee to be Allowed to Pay Administrative Expense Claim to Christopher L. Smoot dba Computer Information Services is approved.

2. The Objection to the Trustee's Application filed by Debra Distler is overruled.

3. The Chapter 7 Trustee, Robert Altman, is authorized to pay Christopher L. Smoot dba Computer Information Services the sum of $70,000.00 as compensation for computer forensics services performed by Smoot for the benefit of the bankruptcy estate.

## ORDER ON MOTION FOR RECONSIDERATION, AND MOTION TO ALTER OR AMEND ORDER ALLOWING TRUSTEE TO PAY ADMINISTRATIVE EXPENSE CLAIM

**THIS CASE** came before the Court for hearing to consider the Motion for Reconsideration, and Motion to Alter or Amend Order Allowing Trustee to Pay Administrative Expense Claim filed by "Debra Distler as CEO of the Debtor E–Z Pay Services, Inc., and individually."

On September 28, 2007, the Court entered an Order on Application by Trustee to be Allowed to Pay Administrative Expense Claim to Christopher L. Smoot dba Computer Information Services. (Doc. 549). In the Order, the Court authorized the Chapter 7 Trustee, Robert Altman, to pay Christopher L. Smoot (Smoot) the sum of $70,000.00 as compensation for computer forensics services performed for the benefit of the bankruptcy estate.

In the Motion currently before the Court, Debra Distler (Distler) asks the Court to reconsider the Order. Generally, Distler appears to assert that the award of compensation is inappropriate because it is based on allegedly fraudulent transactions discovered by Smoot that have not been established in the record. Second, Distler appears to assert that the award is inappropriate because § 503(b) of the Bankruptcy Code only authorizes administrative expense allowances for compensation that is in the nature of wages or salaries.

Distler did not enter an appearance at the hearing on her Motion for Reconsideration.

The Motion should be denied.

### The Order

In the Order approving the Trustee's Application to Pay Smoot, the Court considered the requirements for allowance of administrative expenses under § 503(b)(1) of the Bankruptcy Code. "In order for an expense to be allowed as an administrative claim, it must be actual and necessary to the preservation of the debtor's estate and must have been incurred in an effort to benefit the estate as a whole." *Park National Bank v. University Centre Hotel, Inc.,* 2007 WL 604936, at *5 (N.D.Fla. 2007).

In determining whether the requirements were satisfied in this case, the Court evaluated the services provided by Smoot, as established at an evidentiary hearing conducted on the Trustee's Application.

After considering the evidence, the Court first found that the services performed by Smoot were substantial. (Doc. 549, p. 6). Specifically, Smoot examined fourteen hard drives that had been used by the Debtor, and performed extensive recovery functions to retrieve information that had been deleted from the computers.

Second, the Court found that Smoot's services were necessary for the estate. (Doc. 549, p. 6). In other words, the information that Smoot retrieved from the hard drives was relevant to property of the estate, and enabled the Trustee to understand the Debtor's prepetition transactions.

Third, the Court found that Smoot's services provided a concrete benefit for the estate. (Doc. 549, p. 6). The Trustee testified that he had recovered approximately $400,000.00 as a result of Smoot's services.

Finally, the Court found that the compensation requested for Smoot's services was reasonable. (Doc. 549, p. 7). In reaching the determination that the award was reasonable, the Court considered the hours devoted to the project by Smoot, the nature of the services, and the cost that would have been incurred to obtain comparable services from another source.

**The Motion for Reconsideration**

As indicated above, Distler asserts that the award of compensation is inappropriate because it is based on allegedly fraudulent transactions discovered by Smoot that have not been established in the record.

The Order, of course, refers to the Trustee's testimony that Smoot's services had enabled him to trace certain funds that had been transferred from the estate before the bankruptcy petition was filed, and that the Trustee had recovered approximately $400,000.00 as a result of the services performed by Smoot. (Doc. 549, pp.

3–4). The Trustee's testimony, which was not disputed at trial, was offered to show that Smoot's services had provided a concrete benefit to the estate, as required by § 503(b).

The compensation awarded to Smoot, however, was not based on the existence or avoidability of any allegedly fraudulent transfers, and the Order contains no findings that any transfers were actually fraudulent or improper. Instead, as discussed above, the award was based solely on the Court's analysis of the computer forensics services performed by Smoot at the request of the Trustee.

Second, Distler asserts that the award is inappropriate because § 503(b)(1) of the Bankruptcy Code only authorizes administrative expense allowances for compensation that is in the nature of wages or salaries.

Section 503(b)(1) provides in part:

**11 USC § 503. Allowance administrative expenses**

. . .

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including—

(i) wages, salaries, and commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b)(1). For expenses to be allowed under § 503(b)(1), they must be actual and necessary, and provide a concrete benefit to the debtor's estate. *In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986).

 Distler suggests that the expenses must also constitute wages or salaries. Pursuant to subsection (i) of

§ 503(b)(1)(A), of course, actual and necessary costs of preserving the estate may *include* wages, salaries and commissions for services rendered after the commencement of the case. It is a fundamental rule of construction in bankruptcy cases, however, that the term "including" is not limiting. 11 U.S.C. § 102(3) [1]; *In re Hackney*, 351 B.R. 179, 202–03 (Bankr.N.D.Ala. 2006). Consequently, while wages and salaries are illustrative of costs that may constitute actual and necessary expenses of the estate, the illustration is not intended to be exhaustive. Other compensation is also allowable as an administrative expense, as long as it otherwise satisfies the requirements of § 503(b)(1).

### Conclusion

In conclusion, the Court should not reconsider or amend its award of compensation to Smoot. The award was appropriate based on the evidence presented at trial, and satisfies the requirements for allowance pursuant to § 503(b)(1) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that the Motion for of Reconsideration, and Motion to Alter or Amend Order Allowing Trustee to Pay Administrative Expense Claim filed by Debra Distler, is denied.

---

1. "(3) 'includes' and 'including' are not limiting;" 11 U.S.C. § 102(3).